UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| ROCCO DERUBEIS | : | |
| | : | |
| Plaintiff, | : | |
| | : | **COMPLAINT** |
| – against – | : | |
| | : | Case No. <u>7:22-cv-5285</u> |
| AECOM TISHMAN CONSTRUCTION | : | |
| CORPORATION, FRED CORRADO, and TOM | : | |
| PARSONS | : | **JURY TRIAL REQUESTED** |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff ROCCO DERUBEIS, by and through his attorneys, Sapir Schragin LLP, for his Complaint against Defendants AECOM TISHMAN CONSTRUCTION CORPORATION ("AECOM Tishman"), FRED CORRADO and TOM PARSONS (collectively, "Defendants") alleges as follows:

## INTRODUCTION

1.      AECOM Tishman touts itself to the public as one of Fortune Magazine's "Most Admired Companies" because of its equity, diversion and inclusion initiatives.  The reality for those inside the Tishman Interiors Division, including Mr. DeRubeis, was much different.

2.      According to AECOM Tishman's Equal Employment Opportunity and Affirmative Action Policy, "[a]ny employee who experiences, witnesses or observes any form of discrimination, including harassment, related to this policy must report the incident to his or her supervisor, someone in management or a Human Resources representative," and "[a]ny manager or supervisor who is made aware of, knows of or witnesses a potential violation of this policy has an added responsibility to act and must notify Human Resources immediately."

3.      Similarly, according to the AECOM Tishman Harassment Free Workplace Policy, "[a]ny employee who believes he or she is being harassed, has witnessed harassment or has been discriminated against in any way must report by informing a supervisor, another Company manager or a Human Resources representative immediately," and "[a]ny manager or supervisor who is made aware of, knows of or witnesses a potential violation of this policy has an added responsibility to act and must notify Human Resources immediately."  The Policy also provides that "AECOM will promptly, thoroughly and impartially investigate all reports of harassment and discrimination."

4.      This was all lip service because none of this was done in the case of Mr. DeRubeis. Mr. DeRubeis was subjected to ongoing harassment for years by Fred Corrado, the Executive Vice President in charge of Tishman Interiors Division, and Tom Parsons, Executive Vice President of Tishman Interiors Division.  Mr. DeRubeis was also denied multiple promotions because of his age.  Every attempt by him to complain about Mr. Corrado and/or Mr. Parson was blocked by Mr. Corrado and was ignored with Human Resources who, according to Mr. Corrado, "are the company's HR Department and will protect [the Company's] interest."  In one instance in which Mr. DeRubeis attempted to set up a meeting with Jay Badame, the President of Tishman Construction, to complain about the harassment to which he was subjected by Mr. Corrado and Mr. Parson, Mr. Corrado stepped in and caused Mr. Badame to cancel the meeting.  Mr. DeRubeis never had his chance to have his complaints heard.

5.      When Mr. DeRubeis went around Mr. Corrado and complained to human resources in 2015, Mr. Corrado told him in no uncertain terms that because he went to human resources, "I can't help you anymore" with anything that occurred at the Company.

6.      From there on out, Mr. DeRubeis was discriminated and harassed by Mr. Parsons with impunity.  Mr. DeRubeis was not promoted to Vice President on multiple occasions even though he was qualified for the position and his younger counterparts were promoted.  AECOM Tishman, as many companies did in 2020, then selected Mr. DeRubeis for "standby leave" and then termination of employment under the pretext of COVID and financial difficulties even though younger similarly situated employees were retained.

7.      Mr. DeRubeis now brings this Action against Defendants alleging that his rights have been violated under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101, *et seq.*

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims are brought pursuant to a federal statute, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

12.      The Court has supplemental jurisdiction over Mr. DeRubeis' claims under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") pursuant to 28 U.S.C. § 1367(a).  The state and city law claims are so closely related to Mr. DeRubeis' federal claims as to form the same case or controversy.

13.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because Plaintiff worked for Defendants in New York City and Westchester County, New York, within the Southern District of New York.  Defendants conduct business in this District, and the acts and omissions giving rise to the claims alleged took place within this District.

14.     On or about September 17, 2021, Mr. DeRubeis filed a Charge of Discrimination against Defendant AECOM Tishman with the United States Equal Employment Opportunity Commission, within 300 days of the date that Defendants terminated his employment.  Mr. DeRubeis alleged that he was subjected to discrimination and harassment because of his age and that the termination of his employment was unlawful in that it was based on his age and in retaliation for his complaints about discrimination.

15.     On or about March 25, 2020, the EEOC closed Mr. DeRubeis' case and issued a Right to Sue Letter to him.

16.     The Complaint in this action is being filed with this Court within ninety days of Mr. DeRubeis' receipt of the Right to Sue letter issued by the EEOC.

## THE PARTIES

17.     Plaintiff Rocco DeRubeis resides in Valhalla, New York.  He was employed by Defendant AECOM Tishman on and off from 1985 to 2007, and then continuously from 2007 through  June 2021.

18.     At the time of the termination of his employment on June 14, 2020, Mr. DeRubeis was age 61.  He is currently 62 years of age.

19.     At all relevant times, Mr. DeRubeis was an employee within the meaning of the ADEA, the NYSHRL and NYCHRL.

20.     Defendant AECOM Tishman Construction Corporation is a foreign domestic corporation licensed to do business in the State of New York with its principal place of business is located at 100 Park Avenue, New York, New York.  At all relevant times, Defendant AECOM Tishman Construction Corporation was an employer within the meaning of the ADEA, the NYSHRL and the NYCHRL.

21.     At all relevant times, Defendant Corrado was the Executive Vice President of Tishman Interiors Division and directly supervised Mr. DeRubeis.  Mr. Corrado was responsible for the terms and conditions of Mr. DeRubeis' employment, had the authority to hire and fire individuals including Mr. DeRubeis, and was directly responsible for the retaliation to which Mr. DeRubeis was subjected and the decision to terminate his employment.  As such, he was an employer within the meaning of the NYSHRL and NYCHRL.  Mr. DeRubeis seeks to hold Mr. Corrado personally liable for his discriminatory and retaliatory conduct towards him.

22.     At all relevant times, Defendant Parsons was an Executive Vice President for Tishman Interiors.  Mr. Parsons has the authority to hire and fire individuals including Mr. DeRubeis and was directly responsible for the harassment to which Mr. DeRubeis was subjected. As such, he was an employer within the meaning of the NYSHRL and NYCHRL.  Mr. DeRubeis seeks to hold Mr. Parsons personally liable for his discriminatory and retaliatory conduct towards him.

## STATEMENT OF FACTS

23.     Mr. DeRubeis began working for AECOM Tishman in 1985.  He left in 1991 but came back in 2000 upon request by the Company.  Mr. DeRubeis left again in 2006 before returning in 2007.  Upon his return, Mr. DeRubeis was employed as a Project Manager responsible for the Verizon program throughout Westchester County, Rockland County, The Bronx, Long Island and Connecticut.  He was later asked to take over the Verizon program within the Manhattan area as well.  Mr. DeRubeis was, and is, very successful at his job, and despite AECOM Tishman's revisionist history, he was never advised during his employment about performance issues or any concerns about his relationship with AECOM Tishman clients.

24.     The trouble for Mr. DeRubeis started in 2015 when his request for a reasonable accommodation upon return from a medical leave was denied.  Mr. DeRubeis complained to human resources that he was not being treated fairly or similarly to other employees who had returned from medical leave.  After his complaint, Mr. Corrado told him, in no uncertain terms, that because he went to human resources, "I can't help you anymore" with anything that occurred at the Company.

25.     Mr. Corrado followed through on his threat by denying Mr. DeRubeis a promotion and repeatedly refusing to address his complaints about being subjected to harassment by Mr. Parsons.

**A.     Mr. DeRubeis Is Subject To Discrimination And Harassment By Two Senior Executives Of AECOM Tishman**

26.     Mr. Parsons and Mr. Corrado have a double standard for Mr. DeRubeis and his younger counterparts. They overlook Company policies for younger employees but always enforce them against older employees like Mr. DeRubeis.  For example, they permitted Zeff Dedvukaj to take comp time at his discretion whenever he worked overtime or weekends.  On the other hand, Mr. DeRubeis was required to ask permission before being permitted to do so.

27.     Similarly, Mr. Dedvukaj was permitted to take vacation whenever he wanted and take time off to play golf with clients whenever he wanted, but Mr. DeRubeis was always required to ask permission and his requests was routinely denied.  Disparate treatment vis-à-vis comp and vacation time just as with any other term and condition of employment violates the law and is very hurtful to the victims, including Mr. DeRubeis.

28.     The inability to take comp and vacation time was particularly problematic for Mr. DeRubeis because he was routinely forced to work long hours on projects which were understaffed

by Mr. Parsons.  When AECOM Tishman enters into project agreements with building owners, they execute a General Conditions Agreement.  The General Conditions Agreement sets forth the staffing for the project, including the required executives, managers and project directors. The fees paid to AECOM Tishman are based, in part, on the agreed staffing for the project.  Mr. Parsons, however, did not follow the General Conditions Agreement and understaffed projects that Mr. DeRubeis worked on causing Mr. DeRubeis to log extensive hours on these projects for which he in turn could not get the benefit of extra comp time or days off.  Many clients were unaware that they were paying for staff that were not working on the projects.  This practice of understaffing also lead to disastrous situations for the Company, its employees and the City (*see* https://www.nbcnewyork.com/news/local/falling-glass-from-skyscraper-closes-west-side-highway-200-vesey/1560866/)                    (*see          also*          http://a810-bisweb.nyc.gov/bisweb/ComplaintsByAddressServlet?requestid=1&allbin=1084771).         Mr. DeRubeis complained about these staffing issues but nothing was done about it.

29.    Mr. Parsons also treated Mr. DeRubeis disrespectfully by not communicating with him directly and speaking with his subordinates to get information on projects which were being led by Mr. DeRubeis.

30.    Even worse, Mr. Parsons made unfounded accusations of wrongdoing against Mr. DeRubeis.  In one example, Mr. Parsons reported to Mr. Corrado that Mr. DeRubeis and his staff were not present at a project on a Sunday the day before the project was completed and turned back over to the owner.  Fortunately, Mr. DeRubeis was able to provide documentary evidence to show that he and his team were on site.  Mr. Parsons did this often to Mr. DeRubeis in an attempt to ruin his reputation within the Company.

31.     Mr. Corrado referred to Mr. DeRubeis as "Rocco the Donkey" when people met in Mr. Corrado's office.  This was in reference to a framed picture of a donkey in construction boots that Mr. DeRubeis had gifted to Mr. Corrado.  Mr. Parsons has also made fun of Mr. DeRubeis' weight in front of his coworkers.  He did not make fun of the younger employees who worked in Interiors.

32.     Mr. Corrado also made ageist comments towards Mr. DeRubeis.  During one conversation in which Mr. DeRubeis complained to him about Mr. Parsons and the ongoing lack of promotions and his displeasure with the Company, Mr. Corrado told him words to the effect, "you are not going anywhere, you are too old, no one is going to take you."  Following the termination of Mr. DeRubeis' employment, this message looms large over Mr. DeRubeis as he has yet to find replacement employment and faces the prospect of extended unemployment, and his effective retirement, because of his age in an industry that continues to skew younger.

**B.     Mr. DeRubeis Is Consistently Denied Promotions In Favor Of Younger Employees**

33.     Mr. DeRubeis was routinely passed over for promotion to Vice President during his career with AECOM Tishman while his younger counterparts were promoted.

34.     Mr. DeRubeis complained to management and human resources in May 2015, August 2018, January 2019, February 2019, June 2019, December 2019 and January 2020 that he was being denied a promotion in favor of younger employees, one of whom he hired and trained.

35.     Every time he complained to human resources, he felt that he was either being attacked or outright ignored.  He finally stopped complaining.

36.     When he realized that Mr. Corrado would not address his complaints, he attempted to set up a meeting with Mr. Badame to address his complaints.  Mr. Corrado stepped in and suddenly Mr. DeRubeis' scheduled meeting with Mr. Badame was cancelled and Mr. DeRubeis was never offered an audience to address the ongoing discrimination.

37.     On numerous occasions in response to his complaints, Mr. Corrado told Mr. DeRubeis that he did not get the promotion because he had not worked in Manhattan and "working in Westchester hurt his career growth"  This reason is pretextual, false, nonsensical and falls apart under closer scrutiny.  A review of three younger individuals promoted over Mr. DeRubeis in recent years bears this out.

38.     Robert Edelman (age approximately late 40's) was promoted to Vice President.  He worked for Mr. DeRubeis on the Verizon Program in Manhattan and Long Island.

39.     Zeff Dedvukaj (age approximately mid 40's) was hired as a Project Superintendent and promoted directly to Project Director skipping numerous positions.  Mr. Dedvukaj was hired and trained by and worked entirely for Mr. DeRubeis in Westchester prior to his promotion.

40.     Giuseppe Tagliavia (age approximately late 40's) worked primarily in New Jersey and was promoted to Vice President.

41.     None of these younger employees who worked outside of Manhattan and primarily in Westchester and New Jersey, some under the tutelage of Mr. DeRubeis, were prevented from receiving a promotion.

42.     Mr. Corrado's reasoning was also patently untrue.  Mr. DeRubeis had extensive experience working on projects in Manhattan.  Although the Verizon Westchester program was

based in Westchester, upon Mr. Corrado's request Mr. DeRubeis reported daily to the 50 Varick Street office and worked on Verizon projects throughout Manhattan.

43.     Mr. DeRubeis also worked on other Manhattan projects including 712 Fifth Avenue, 23 Wall Street, the George Washington Bridge Bus Terminal and Mall, Columbia University Prentice Hall, Park Avenue Armory, Syneos Health, General Electric's Corporate Offices at Rockefeller Center, GE's Park Avenue Offices and the West Side Development project.

44.     AECOM Tishman's own marketing materials presented to clients acknowledged Mr. DeRubeis' work on the Verizon Façade Restoration Program involving restoration and waterproofing of 77 Verizon buildings throughout New York City and his work on the 712 Fifth Avenue Project described as a "50-story, mixed use commercial building in midtown Manhattan." There was no basis to deny him a promotion based on the apparent limited geographic scope of his work.

45.     Knowing that this reasoning was not supportable, in a January 2020 meeting with Mr. DeRubeis and John Overend (First Vice President), Mr. Corrado then shifted gears and offered an additional reason for failing to promote Mr. DeRubeis.  At that time, Mr. Corrado claimed that Mr. DeRubeis was a "difficult placement" and that "other executives" did not want to work with him.  The one example he pointed to was First Vice President Eric Schisler who apparently did not want to work again with Mr. DeRubeis.  This was the first Mr. DeRubeis had ever heard any complaint about his working relationships.  He received no formal performance reviews and this was never discussed with him prior to this.

46.     Interestingly, Mr. Corrado seems to have forgotten about the clients who refused to work with him and Mr. Parsons.  On client repeatedly told Mr. DeRubeis to "keep [Mr. Corrado

and Mr. Parsons] away from me and the projects." Another client refused to work with Mr. Corrado and Mr. Parson and would only work with Mr. DeRubeis on the project.  When Mr. DeRubeis informed Mr. Corrado of this request, Mr. Corrado responded, "f**k him."

47.     The one performance review Mr. DeRubeis is aware of was completed by John Overend for 2019.  Mr. DeRubeis received a rating of "strong."

48.     The one project he worked on with Eric Schisler was a success and Mr. Schisler told him that everything on the project went well.  He never expressed any dissatisfaction with Mr. DeRubeis performance.

49.     When Mr. DeRubeis asked Mr. Corrado for examples of "other executives" to support this allegation, he was provided no further information by Mr. Corrado because none exists.  Even if Mr. Schisler did not want to work with Mr. DeRubeis again, the opinion of one person from one project during the course of a 30-year career should not preclude him from receiving a promotion.

## C.     Mr. DeRubeis Is Placed On Standby Leave And Ultimately His Employment Is Terminated Because Of His Age And Retaliation For His Complaints

50.     Following his most recent complaint in January 2020 about not being promoted due to his age and harassed based on his age, Mr. DeRubeis was placed on "standby leave" in December 2020, allegedly because of the Covid-19 pandemic.  Mr. DeRubeis' standby leave was supposed to end on February 11, 2021, but it was extended and he was never ultimately brought back to work.  On June 14, 2021, he was notified that his employment was terminated.

51.     Despite the ongoing pandemic, younger Project Directors in similar positions have not been placed on standby leave and/or were brought back from leave and did not have their employment terminated.  For example, Mr. Dedvukaj was transferred from a project in Armonk to

11

one in Manhattan rather than being placed on standby leave.  For other examples, Chris Oliveira (Project Manager) (approx. late to mid-20's) who worked for Mr. DeRubeis at the Yonkers Raceway project in Yonkers was transferred to a project in Manhattan and Phil Passaro (Project Superintendent) was transferred to a project in Manhattan to preserve their employment. Additionally, another younger Project Manager, Tom Guzzardi, who worked under Mr. DeRubeis who was placed on leave and returned to work in lieu of Mr. DeRubeis.  Mr. DeRubeis was not provided these opportunities even though he was fully qualified to work on these projects.  Instead, Mr. DeRubeis was only offered a project in Boston which would have required relocation of his family.

52.     During this time, Mr. DeRubeis actively sought and recommended projects to AECOM Tishman to facilitate his return but every time he did, Mr. Corrado dismissed them without consideration. To add insult to injury, when Mr. DeRubeis asked Mr. Corrado why staff that have worked for him were being protected and put on projects and he was being overlooked, Mr. Corrado's only response was that "there is no work for you!"  Eventually, on June 14, 2021, after Mr. DeRubeis hired counsel and complained about discrimination, harassment and the failure to return him to work from leave, he was notified that his employment with AECOM Tishman was terminated.

**FIRST CAUSE OF ACTION**
***Discrimination and Harassment in Violation of the ADEA Against AECOM Tishman Construction Corporation***

52.     Plaintiff realleges and incorporates all allegations in the preceding paragraphs as through fully stated herein.

53.     Defendant unlawfully discriminated against Plaintiff, on the basis of his age in violation of the ADEA.

54.     On a continuing and ongoing basis throughout Plaintiff's employment, Defendant subjected him to a discriminatory, harassing, hostile work environment on the basis of his age in violation of the ADEA.

55.     Plaintiff was 61 years old at the time Defendant terminated his employment because of his age.  In terminating Plaintiff's employment because of his age, Defendant AECOM Tishman Construction Corporation violated the ADEA.

56.     As a result of Defendant's discrimination, Plaintiff has and continues to suffer lost wages, lost employment and career opportunities, and other pecuniary damages and lost privileges of employment, and has incurred and will continue to incur attorney's fees and costs in the prosecution of his claims.

57.     As a result of Defendant's discrimination, Plaintiff suffered and continues to suffer emotional distress, pain and suffering, and physical and mental anguish.

58.     Defendant's unlawful conduct was willful, wanton, and egregious and Plaintiff is entitled to liquidated damages.

**SECOND CAUSE OF ACTION**
***Discrimination and Harassment in Violation of the NYSHRL***
***Against All Defendants***

59.     Plaintiff realleges and incorporates all allegations in the preceding paragraphs as though fully set forth herein.

60.     On a continuing and ongoing basis throughout Plaintiff's employment, Defendants subjected him to a discriminatory, harassing, hostile work environment on the basis of his age in violation of the NYSHRL.

61.     Plaintiff was 61 years old at the time Defendant terminated his employment because of his age.  In terminating Plaintiff's employment because of his age, Defendants violated the NYSHRL.

62.     As a result of Defendants' discrimination, Plaintiff has and continues to suffer lost wages, lost employment and career opportunities, and other pecuniary damages and lost privileges of employment, and has incurred and will continue to incur attorney's fees and costs in the prosecution of his claims.

63.     As a result of Defendants' discrimination, Plaintiff suffered and continues to suffer emotional distress, pain and suffering, and physical and mental anguish.

64.     Defendants' unlawful conduct was willful, wanton, and egregious and Plaintiff is entitled to punitive damages.

## THIRD CAUSE OF ACTION
### *Discrimination and Harassment in Violation of the NYCHRL*
### *Against All Defendants*

65.     Plaintiff realleges and incorporates all allegations in the preceding paragraphs as though fully set forth herein.

66.     On a continuing and ongoing basis throughout Plaintiff's employment, Defendants subjected him to a discriminatory, harassing, hostile work environment on the basis of his age in violation of the NYCHRL.

67.     Plaintiff was 61 years old at the time Defendant terminated his employment because of his age.  In terminating Plaintiff's employment because of his age, Defendants violated the NYCHRL.

68.     As a result of Defendants' discrimination, Plaintiff has and continues to suffer lost wages, lost employment and career opportunities, and other pecuniary damages and lost privileges of employment, and has incurred and will continue to incur attorney's fees and costs in the prosecution of his claims.

69.     As a result of Defendants' discrimination, Plaintiff suffered and continues to suffer emotional distress, pain and suffering, and physical and mental anguish.

70.     Defendants' unlawful conduct was willful, wanton, and egregious and Plaintiff is entitled to punitive damages.

**WHEREFORE**, Plaintiff prays for the following relief:

A.     Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the ADEA, the NYSHRL and the NYCHRL;

B.     An award of lost wages, employment benefits and other lost compensation as a result of Defendants' discrimination against Plaintiff on the basis of his age;

C.     Reinstatement to Plaintiff's position (or a comparable position) and back pay or, alternatively, an award of front pay until the date on which Plaintiff intended to retire from his position;

D.     An award of liquidated damages as a result of Defendants' willful conduct;

E.     An award of punitive damages as a result of Defendants' willful conduct;

F.     An award of compensatory damages for the emotional distress suffered by Plaintiff;

G.     An award for any additional taxes incurred by her due to Defendants' unlawful conduct;

H.     An award of Plaintiff's reasonable attorneys' fees and costs incurred in this action;

I.     Pre and post-judgment interest on all sums awarded to Plaintiff; and

J.      Such other relief as the Court deems just and proper.

Dated:   June 22, 2021
          White Plains, New York

                          **SAPIR SCHRAGIN LLP**

                    By:   _____
                          Howard Schragin, Esq.
                          399 Knollwood Road, Suite 310
                          White Plains, New York 10603
                          (914) 328-0366
                          (914) 682-9128 (fax)
                          E-Mail: hschragin@sapirschragin.com
                          *Attorneys for Plaintiff*

16